UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

CARELYN FYLLING,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

    Defendant.
_____/

## **COMPLAINT FOR NEGLIGENCE AND JURY DEMAND**

The plaintiff CARELYN FYLLING [hereafter "plaintiff" and/or "FYLLING"] sues the defendant ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation [hereafter "defendant" and/or "RCCL"] and alleges:

1. This is a maritime negligence action against a cruise line for personal injuries sustained aboard ship by a passenger during a cruise.

2. The personal injuries complained of in this lawsuit occurred on navigable waters during a voyage that began and ended in the United States aboard a vessel engaged in traditional maritime activity, and were potentially disruptive of maritime commerce; and subject-matter jurisdiction of this claim is founded upon 28 U.S.C. §1333(1) (maritime jurisdiction).

3. Defendant RCCL, at all relevant times, is a Liberian corporation that operates foreign-flagged cruise ships; and maintains its principal place of business in Miami-Dade County, Florida.

4. Plaintiff FYLLING, at all relevant times, is a 71 year old U.S. citizen who resides, is domiciled in, and is a citizen of, the State of Florida.

5. The plaintiff, at all relevant times, was a fare-paying passenger aboard the cruise ship *M/S Harmony of the Seas* ["the subject vessel"] which at all relevant times is operated by defendant RCCL.

6. This negligence action for maritime personal injuries against RCCL is being pursued in this court, as opposed to state court as otherwise allowed by the Saving To Suitors Clause of 28 U.S.C. §1333(1), because RCCL, at all relevant times, unilaterally inserts a clause into its cruise ticket contracts that requires all passengers from anywhere in the world to file all cruise-related suits, "if at all," *only* in federal court *and only in this district and division*.

7. The plaintiff timely and adequately presented her claim in writing to RCCL, and timely filed the present lawsuit (within suit time limits established and extended in writing by RCCL), in accordance with applicable terms of the passenger ticket contract issued by RCCL.

8. RCCL and the subject vessel, at all relevant times, regularly transport passengers for hire between ports in the United States and foreign countries and are therefore marine common carriers of passengers.

9. RCCL, at all relevant times, owed the plaintiff a non-delegable duty to exercise care for her safety required of a marine common carrier of passengers.

10. Alternatively, defendant RCCL and/or its agents and employees, at all material times, engaged in certain affirmative undertakings, as hereinafter alleged, and so acquired a duty to exercise reasonable care in those undertakings.

11. RCCL, at all relevant times, undertook to design, specify, create, inspect, approve, accept, maintain, and control the configuration and appearance of the walkways, ramps, doors, and entranceways in the guest common areas aboard the subject vessel.

12. RCCL, prior to the incident sued upon in this complaint, and prior to the planning and construction of the subject vessel (that ended in early 2016), had actual knowledge that trips and falls are a leading cause of injuries aboard defendant's vessels, particularly at ramps and doorways.

13. RCCL, at all relevant times, has had actual knowledge that the risk of falls to its passengers aboard its cruise ships is heightened because of a general lack of passenger familiarity with vessel appurtenances.

14.     RCCL, prior to the incident sued upon in this complaint, and prior to the planning and construction of the subject vessel (that ended in early 2016) knew, or in the exercise of reasonable care should have known, of the existence and substance of relevant safety codes, regulations, standards, guidelines, and recommendations, issued by respected safety organizations, which define unsafe walkway and ramp conditions that should be avoided in order to minimize the risk of trips and falls by pedestrians.   These include, but are not limited to, SOLAS, *Part C, Regulation 13* ("safe escape routes shall be provided.") and <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition, clear of obstacles."); the International Maritime Organization's Maritime Safety Committee's MSC/Circular 735 (June 24, 1996)("Recommendations on the Design and Operation of Passenger Ships to Respond to Elderly and Disabled Person' Needs"); the National Fire Protection Association's Standard NFPA-301 ("Code for Safety to Life from Fires on Merchant Vessels"); the Economic Commission for Europe's Standard ECE/trans/sc.3/188 ("Guidelines for Passenger Vessels Also Suited for Carrying Persons with Reduced Mobility"); the U.S. Access Board's "Passenger Vessel Accessibility Guidelines;" the American Society for Testing and Material's Standard F1166-07 ("Standard Practice for Human Engineering Design for Marine Systems, Equipment, and Facilities"); and ASTM 1637-95 ("Standard Practice for Safe Walking Surfaces").

15. Reasonable care, at all relevant times, required RCCL (in its design, specification, creation, inspection, approval, acceptance, maintenance, and control of the configuration and appearance of the walkways, ramps, doorways, and entranceways in the guest common areas aboard the subject vessel) to become knowledgeable of and apply relevant safety codes, regulations, standards, guidelines, and recommendations - in order to avoid presenting unnecessary tripping hazards to passengers.

16. RCCL, at all relevant times, designed, specified, created, inspected, approved, accepted, maintained, and otherwise controlled the configuration and appearance of the entranceway to the vessel on Deck 5, starboard midships, which RCCL required embarking passengers to use to board the vessel.

17. RCCL, upon information and belief, in regards to the configuration and appearance of the subject entranceway, failed to research and/or to take into account and/or to apply the aforementioned safety codes, regulations, standards, guidelines, and recommendations.

18. The entranceway in question, at all relevant times, has a short ramp that is sloped up to the door sill.

19. The following photograph fairly and accurately shows the appearance of the subject entranceway as it appeared at the time of the incident complained of in this lawsuit, with the exception that there was no red rug just inside the doorway:

5



20. The ramp, let alone its slope, is nearly impossible for boarding passengers to see (in part because the ramp, at all relevant times, is camouflaged by a large RCCL logo).

21. The slope and camouflaging of the ramp, at all relevant times, contravene relevant safety codes, regulations, guidelines and recommendations, and presents an unnecessary and unreasonable tripping or stumbling hazard to passengers boarding the vessel.

22. Additionally, at all relevant times, the subject entranceway has a faux wood scupper cover, just outside to doorway, along the length of the door sill.

23. The following photograph fairly and accurately shows the scupper cover as it appeared at the time of the incident complained of in this lawsuit:



24. The scupper cover, at all relevant times, is insufficiently secured by supports so that when embarking passengers step on it in a certain way, it bounces and bows up and down – thereby presenting an unnecessary and unreasonable tripping hazard which contravenes relevant safety codes, regulations, guidelines and recommendations.

25. The unnecessary and unreasonable tripping hazard presented by the scupper cover is nearly impossible for an embarking passenger to see ahead of time when boarding the ship.

26. Additionally, at all relevant times, there is a significant, abrupt, vertical change in elevation in the walkway where the scupper cover meets the doorsill,

which presents a "lip" (*i.e*., an unnecessary and unreasonable tripping hazard) to passengers boarding the vessel.

27.     The lip and the unnecessary and unreasonable tripping hazard it presents to embarking passengers, at all relevant times, contravenes relevant safety codes, regulations, and guidelines; and it is difficult for a passenger to see or appreciate.

28.     RCCL, at all relevant times, in its building, fitting, and operation of the vessel, either designed, specified, created, inspected, approved, maintained and controlled the conditions and hazards alleged in Paragraphs 21 through 27 or, alternatively, RCCL knew or should have known of them at all relevant times.

29.     Additionally, RCCL, upon information and belief and at all relevant times, experienced and knew of incidents where passengers aboard its vessels had encountered and tripped and/or stumbled over one or more of the same types of hazards in question.

30.     On or about March 4, 2017, while the subject vessel was in port at Port Everglades, Florida, the plaintiff was boarding the subject vessel through the subject entranceway on Deck 5, exercising due care for her own safety.  As she was doing so, she unexpectedly encountered one or more of the conditions and hazards referenced in Paragraphs 21 through 27 above, which caused her to trip and/or stumble through the entranceway and to fall forward and strike her head on the hard deck inside the door [hereafter, "the subject incident"].

31. RCCL, at all relevant times:

   A. Negligently designed and/or specified and/or created and/or approved and/or maintained and/or controlled the hazardous conditions in question; and/or,

   B. Negligently failed to conduct a reasonable inspection to discover the hazardous conditions in question; and/or,

   C. Negligently failed to correct or mitigate the hazardous conditions in question; and/or,

   D. Negligently failed to warn passengers of the hazardous conditions in question; and/or,

   E. Negligently failed to assist the plaintiff to safely board the vessel; and/or,

   F. Otherwise negligently failed to exercise reasonable care.

32. As a direct and proximate result of the subject incident and RCCL's negligence, the plaintiff suffered severe bodily injury (including a traumatic brain injury), aggravation of pre-existing conditions, physical and mental pain and suffering, disability, disfigurement, loss of capacity for enjoyment of life, costs of medical care and treatment, loss of job and earnings and/or earning capacity and loss of the value of her services to her spouse.  The injuries are permanent and continuing in nature and the plaintiff will suffer these losses in the future.

WHEREFORE the plaintiff demands judgment for damages against defendant RCCL, including prejudgment interest; and respectfully requests and moves for a binding trial by jury on all issues, pursuant to FRCP 39(c)(2).

DATED this 16th day of May, 2018.

>ERIKSEN LAW FIRM
>2161 Palm Beach Lakes Blvd., Suite 410
>West Palm Beach, FL 33409
>(866) 493-9902
>(561) 533-8715 (Fax)
>mde@travelaw.com
>
>By: */s/ Michael D. Eriksen*
>        Michael D. Eriksen
>        Florida Bar No. 316016